OPINION OF THE COURT
Simons, J.
Plaintiff brought this action against the manufacturer of a press brake used to shape sheet metal, defendant Dreis & Krump Manufacturing Company, seeking to recover for injuries he sustained when his hand was crushed in it. Defendant in turn impleaded plaintiff’s employer, third-party defendant Cambridge Filter Corporation. Although plaintiff cannot remember the events just prior to the accident and there were no witnesses, he contended at trial that he was injured when he reached under the ram reflexively to secure a piece of slipping sheet metal on the bed of the press. He claimed that as he did so he accidentally stepped on the foot pedal and activated the ram causing it to descend and crush his hand. Defendant contended plaintiff was injured while he was operating the press when his hands, which were holding the metal as the operation requires, were pulled under the ram because plaintiff had not properly secured the metal on the bed of the press. The case was submitted to the jury on theories of negligence and products liability. Under those theories it was plaintiff’s burden to establish that the negligent failure of defendant to warn him of the dangers in using the machine caused him injury or that the defendant improperly designed *332 the machine and that his injury was not the result of his misuse of it (Voss v Black & Decker Mfg., 59 NY2d 102, 106-107; Codling v Paglia, 32 NY2d 330, 342). The critical question for the jury to determine was what caused the metal to slip, defendant’s failure to properly design the machine or warn users of its dangers or plaintiff’s failure to properly set it up. Answering that question, the jury found no fault on plaintiff’s part and awarded him a substantial verdict, apportioned equally between defendant and the third-party defendant. The Appellate Division affirmed the judgment and we granted leave to appeal.
The principal issue before us is whether the trial court committed error in submitting the question of plaintiff’s amnesia to the jury in the absence of expert testimony supporting his claim or causally relating the amnesia to the accident (see, Schechter v Klanfer, 28 NY2d 228), and in permitting plaintiff’s engineering expert to testify how the accident happened. Other issues concern plaintiff’s cross-examination of defendant’s witnesses about other accidents with the press and the court’s failure to charge the weight to be accorded industry safety standards. We find errors with respect to all these issues and therefore reverse.
I
The press brake is a mechanical device which bends sheet metal used in the manufacture of Cambridge’s filtration products. When the operator of the machine depresses a foot pedal, located 10 inches off the floor, power is transferred to a ram which then descends 14 inches to the bed of the machine. Metal placed on the bed is pressed to the desired shape by means of various dies inserted in the ram and the bed.
When properly done, the set-up procedure requires that dies be inserted in the ram and the bed first. The ram is then inched to within one-quarter inch of the bed, a marked scrap piece is inserted and the ram is lowered to grab the scrap piece on the mark. L-shaped stops located at the back of the bed are then set and locked in place to ensure that the metal is held in the proper position when the machine forces the dies together to bend it. During bending the operator must use both hands to hold the metal against the stops. When the stops are properly set, the metal pushes against them and remains in place while the machine is in operation.
Plaintiff had worked on press brakes for five years. At trial, *333 he testified that he could not remember how the accident happened but he did remember going around to the back of the machine and locking the stops before using it. He said that his normal set-up practice was to scribe a piece of scrap metal, set it on the bed of the machine and then inch the ram down until it just touched the scrap metal. When the ram engaged the metal at the scribe line, he stopped the ram and went around to the back of the machine and set the stops by butting them up against the metal and tightening them down with a wrench. However, at an examination before trial plaintiff testified that prior to the accident he had set the stops without a piece of scrap metal in the machine. Defendants thus contended that the accident was a result of the plaintiff’s negligent set-up procedure because he set the stops by eye without measuring them with a scrap piece.
Plaintiff’s foreman testified that he did not see the accident but that he heard metal fall and after the accident he saw a piece of metal hanging out the back of the press. The foreman raised the ram and removed plaintiff’s hand. Plaintiff was conscious but quiet, and said to him "I finally done it.”
Plaintiff called an engineer as an expert witness to testify about defects in the design of the machine because of the absence of guards and about defendant’s failure to adequately warn users of the dangers of the machine. Over objection, he also speculated that the accident happened when plaintiff accidentally hit the foot pedal while trying to retrieve the metal as it fell off the bed.
II
A plaintiff who suffers amnesia as the result of a defendant’s acts is not held to as high a degree of proof in establishing his right to recover for injury as is a plaintiff who can describe the events (Schechter v Klanfer, 28 NY2d 228, supra). The rule is intended to avoid unfairness to a plaintiff who has suffered amnesia as a result of the accident and who, because he cannot testify to the event, might otherwise be prejudiced by an instruction to the jury that it may draw the strongest inferences against a party who fails to testify or who withholds evidence (see, Noce v Kaufman, 2 NY2d 347, 353; Matter of Randel, 158 NY 216, 219). It is also based, at least in part, on the belief that since the plaintiff is not able to testify, it is unfair to permit defendant to stand mute and defeat the claim (see, Noseworthy v City of New York, 298 NY 76). The rule *334 does not entitle the jury to presume plaintiff exercised due care at the time of the accident nor does it shift the burden of proof: plaintiff must still establish a prima facie case. It merely describes a method or approach to weighing evidence and permits the jury greater latitude in drawing inferences favorable to plaintiff (Schechter v Klanfer, supra; Townley v Bagby Transfer Co., 19 AD2d 757; Cary v Short, 16 AD2d 309; and cf. Amnesiac as Entitled to Presumption of Due Care, Ann., 88 ALR3d 622). A plaintiff entitled to an amnesia charge may prevail on a lighter burden of persuasion but he must make some showing of defendant’s fault (see, Jarrett v Madifari, 67 AD2d 396, 404) and his burden is not satisfied if the inferences are equally balanced (see, Cole v Swagler, 308 NY 325). In New York, contrasted with some other States, the rule may come into play even if there are eyewitnesses (Schechter v Klanfer, supra). Because loss of memory is easily feigned, before plaintiff may receive the benefit of the rule, he must prove by clear and convincing evidence that defendant’s acts were a substantial factor in causing his condition (Schechter v Klanfer, supra; see, PJI 1:62, 1:64 & 1986 Cum Supp).
All of this is familiar law. The new issue before us is whether plaintiff must introduce expert evidence to satisfy that burden. In earlier cases involving loss of memory, such evidence was presented and thus the courts had no occasion to decide whether it was required to entitle plaintiff to the benefit of the instruction (see, e.g., Schechter v Klanfer, supra; Townley v Bagby Transfer Co., supra; Cary v Short, supra). In this case, plaintiff relied solely upon his own statement that he had no memory of the event and of the circumstances surrounding it. He contends that evidence of the nature of the trauma, his lack of outcry at the time and other acts suggestive of a mind not comprehending or understanding the gravity of the accident were enough to have the jury pass on the issue. We hold it was not.
Amnesia, like most medical conditions, is beyond the understanding of laymen and expert evidence on the matter is not only helpful, it is required if plaintiff is to prove the condition by clear and convincing evidence (see, Koehler v Schwartz, 48 NY2d 807; Benson v Dean, 232 NY 52; Keane v Sloan-Kettering Inst, for Cancer Research, 96 AD2d 505; cf. Hammer v Rosen, 7 NY2d 376; Shaw v Tague, 257 NY 193; Rivera v State of New York, 115 Misc 2d 523). It is undoubtedly true that trauma may cause amnesia and the gravity of the trauma and *335 the nature of the accident are all factors the jury is entitled to consider when deciding whether to apply the rule. But without the aid of experts, a jury of laymen is not capable of evaluating the effects of a trauma or the symptoms which may verify the loss of memory and indicate that it is real and not feigned. In the absence of expert evidence establishing a loss of memory and its causal relationship to defendant’s fault, the jury may not consider the question or apply a lesser degree of proof in evaluating plaintiff’s claim (see, Costa v Hicks, 98 AD2d 137, 146; Jennings v State of New York, 55 AD2d 745).
Plaintiff contends, and the Appellate Division found, that the error was harmless because the two expert witnesses produced by the parties agreed on causation. The testimony indicates a sharp dispute on the issue, however. Defendant contended that plaintiff failed to secure the stops and lock them into place and that his failure to do so permitted the sheet metal to slip off the back of the bed after he activated the ram. It argues that it was plaintiff’s failure to secure the metal properly that pulled his hand into the press. Plaintiff’s expert was permitted to testify, over objection, that the machine was properly set up but that the metal slipped and plaintiff reached for it reflexively, stepping on the pedal accidentally when he did so. Thus, contrary to plaintiff’s claim, not only did the expert witnesses disagree on causation, but the opinion of plaintiff’s expert was based upon facts which were not established by the evidence and it should not have been considered by the jury (see, Tarlowe v Metropolitan Ski Slopes, 28 NY2d 410; Matter of Aetna Cas. & Sur. Co. v Barile, 86 AD2d 362; Horn v State of New York, 31 AD2d 364).
Plaintiff also contends that the judgment may stand because the jury specifically found in his favor on the products liability claim and the amnesia charge related only to the negligence cause of action. The court did not limit the amnesia charge to the negligence cause of action, but more importantly, it was plaintiff’s burden to prove how the accident happened in both causes of action. Specifically, he was required to prove in the products liability claim that the machine was being used at the time " ‘for the purpose and in the manner normally intended’ ” (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 106, supra; Bolm v Triumph Corp., 71 AD2d 429, 433). His obligation to do so was substantially lessened by the court’s erroneous charge and by the speculation of his expert.
*336 Ill
Appellants cite two other errors.
During the cross-examination of one of defendant’s officers, plaintiffs counsel asked the witness if, before plaintiffs accident, he had heard of other accidents with this press. The witness denied knowledge of any accidents at first but after being shown documents to refresh his recollection he admitted that he had. The questions about prior accidents were originally permitted over objection to establish that the condition was dangerous and that defendant had notice of it before plaintiffs injury. That evidence could have been admissible for such purposes if plaintiff established that the prior accidents were similar to his (see, Hyde v County of Rensselaer, 51 NY2d 927; cf. Flansburg v Town of Elbridge, 205 NY 423, 430-431; Vega v Jacobs, 84 AD2d 813; Price v Alfieri Concrete, 70 AD2d 932). He failed to do so, but nevertheless the court permitted the questioning to continue and eventually, over objection, it allowed counsel to inquire about accidents subsequent to plaintiffs. It later changed its ruling and allowed the line of questioning solely for purposes of credibility. The questions were not proper, however, and they could not be made so by the use of documents to impeach the credibility of defendant’s witness or refresh his recollection on matters which were not properly before the jury in the first place.
The other point concerns the jury’s consideration of the so-called ANSI standards. Before the accident defendant had delivered to the third-party defendant a publication of the American National Standards Institute, Inc., entitled the Institute’s "Safety Requirements for the Construction, Care and Use of Power Press Brakes.” Defendant’s counsel introduced this publication into evidence at the trial and questioned several witnesses extensively about matters contained in it, contending that they established the custom and usage in the industry and placed certain responsibilities on the employer to provide guards to the machine and safety tools to be used by the employee during operation of the press brake. Counsel for the third-party defendant requested the court, both at the conclusion of the charge and again after the jury requested delivery of the publication for its examination in the jury room, to charge that the requirements set forth in the ANSI booklet were only some evidence of negligence. The court denied the request and failed to give any instruction at all on the subject.
*337 The ANSI requirements were properly admitted and could be considered by the jury as some evidence of negligence if it first found that the standards set forth in the booklet represented the general custom or usage in the industry. But even if the jury so found, the standards were not conclusive on the subject of negligence and the jury should have been instructed that they were not conclusive but were to be considered with all the other facts and circumstances of the case in determining whether third-party defendant’s conduct was reasonable (see, Trimarco v Klein, 56 NY2d 98; Shannahan v Empire Eng. Corp., 204 NY 543; see also, Zimmer v Chemung County Performing Arts, 65 NY2d 513, 522-523; 1 NY PJI2d 142-143; Richardson, Evidence § 187, at 158-161 [10th ed]).
Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial granted.
Judges Meyer, Kaye, Alexander and Titone concur; Chief Judge Wachtler and Judge Hancock, Jr., taking no part.
Order reversed, etc.